# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Chaim Rubenstein, individually and on behalf of others similarly situated<br>2 Wallenburg Circle<br>Monsey, New York 10952<br><br>Plaintiff,<br><br>vs.<br><br>BUGMACE LIMITED LIABIIITY COMPANY, aka BUG MACE, INC.<br>C/O Kevin McErlean, Registered Agent<br>245 Colts Neck Rd<br>Farmingdale, NJ 07727-3641<br><br>and<br><br>Kevin W. McErlean<br>245 Colts Neck Rd<br>Farmingdale, NJ 07727-3641<br><br>Defendants. | CASE NO. 18-7253<br><br>JUDGE<br><br><br>JURY DEMAND |

## INTRODUCTION

1. This case is about marketplace deception:

    Deception permeates the American marketplace. Deceptive marketing harms consumers' health, welfare and financial resources, reduces people's privacy and self-esteem, and ultimately undermines trust in society.[1]

---

[1] Deception In The Marketplace: The Psychology of Deceptive Persuasion and Consumer Self-Protection (1st Edition 2009), see https://www.amazon.com/Deception-Marketplace-Psychology-Persuasion-Self-Protection/dp/0805860878.

2. Defendants deceived Plaintiff in the ubiquitous e-commerce transaction on Web site https://www.homedepot.com (the "Site"), wherein Defendants advertised/labeled/marketed, and Home Depot offered to sell, "Bug Mace 2oz. All Natural Organic Mosquito and Insect Repellant" (the "Product").

3. Defendant Bugmace Limited Liability Company ("LLC"), of which Defendant Kevin W. McErlean is Managing Member, manages the "BugMace" brand. LLC and McErlean shall hereafter be referred to at times as "Defendant." McErlean has individual responsibility and LLC has entity responsibility, jointly and separately, for the acts and omissions herein challenged as unlawful.

4. The Product is marketed to control all manner of insect infestation, particularly mosquitoes, gnats, flies and ticks, common in Rockland County.

5. Plaintiff took specific note of Defendant's representations relating to the all natural and organic properties of the Product, as well as its purported safe use for children:

BugMace All Natural and Organic Mosquito and Insect Repellent Spray. BugMace is an all-natural, certified organic exotic blend of powerful essential oils proven to repel mosquitoes, flies, gnats, ticks, biting flies, no-see-ums, chiggers, ants, and fleas. BugMace is the safest, most effective natural repellent and completely DEET free. Contains the perfect blend of certified organic essential oils proven to ward off persistent flying and crawlin insects and mosquitoes. BugMace is non-oily, dries in seconds and smells great. Also, BugMace all natural mosquito repellent is ozone friendly and made with 100% recyclable materials. BugMace insect repellent is DEET free and an environmentally green product. 100% safe for you, your family, pet's and the environment.



6. Those who purchase Product from third-party sites such as Walmart see the same[2] —or substantially the same--representations, all of which are created by Defendant: to wit: "BugMace All natural & Organic Mosquito & Insect Repellant."

6. Although the Site repeatedly represents the Product to be "All Natural" and non-toxic, the Product, in fact, contains a synthetic chemical known as potassium sorbate. While this ingredient does occur naturally, virtually all of the potassium sorbate used today is manufactured synthetically. And LLC/McErlean have conceded that the potassium sorbate used in the subject formulation at relevant times was synthetic. See https://en.wikipedia.org/wiki/Potassium_sorbate. Representing the Product to be "All Natural" was a violation of Sections 349-350 of the New York Business Code.

7. Defendant's proprietary website contains a plethora of "All Natural" representations:

**100% Natural! Safe For Your Family Pets and the Environment**

BugMace™ is an exotic blend of essential oils specially formulated to repel a broad range of insects, containing the perfect blend of all-naturalorganic essential oils proven to ward off even the most persistent flying and crawling insects & mosquitoes. BugMace™ is non-oily, smells great and is ozone friendly, made with 100% recyclable materials. BugMace™ is 100% natural, containing no artificial colors or harsh chemicals and has a pleasant lemon-vanilla fragrance offering hours of protection.

---

[2] https://www.walmart.com/ip/BugMace-All-Natural-Organic-Mosquito-Insect-Repellent; see also https://jet.com/product/BugMace-All-Natural-and-Organic-Mosquito-and-Insect-Repellent; https://www.ebay.com/p/Bugmace-8-Oz-All-Natural-Organic-Mosquito-Outdoor-Insect-Repellent B01F9IHZT6/689391029?iid=323294222483&chn=ps; https://www.amazon.com/BugMace-Natural-Mosquito-Insect-Repellent/dp/B01F9IHZTG (last visited August 2, 2018.)

> Product info: BugMace™ is an all-natural, *essential organic blend of powerful mosquito & insect repellents designed to repel mosquitoes, flies, gnats, ticks & most all other nuisance insects. **Active Ingredients:** Lemongrass oil*, 6%; Citronella oil*, 4%; Soybean oil*, 3%; Geranium oil*, 3%; Rosemary Oil*, 2%; Clove oil*, 1.25%; Thyme oil*, 1.25% Inerts total 79.5%: Purified water/Aqua, Lechithins, Vanillin, Potassium benzoate, Potassium sorbate. **Application: Shake well.** Test small area of skin prior to application.

8. The Environmental Working Group has studied potassium sorbate and deems the ingredient to carry a moderate risk of organ system toxicity.

## NOTICE OF CLAIM AND EFFORTS TO RESOLVE

9. Plaintiff gave Defendant full notice of his claim, per UCC 2-607, on or about June 11, 2018, affording 30 days for a response. Plaintiff requested that Defendant: "Cease and desist from using the All Natural Claim in the marketing, advertising, labeling and sales of the Product." Defendant responded, stating:

> However, in light of your claim and in order to avoid the issue of whether potassium sorbate can be an ingredient in our all natural product, we are taking steps to remove from the formulation, label, and marketing.

10. Notwithstanding the above response, Defendant has not confirmed corrective action and has continued, as of August 10, 2018, to market the Product as "all natural," despite the continued use of potassium sorbate. Defendant refuses to adjust its disclosures to be non-deceptive.[3] Defendant has made zero offer of restitution to Plaintiff or to harmed class members.

## JURISDICTION AND VENUE

11. Claims asserted herein arise under the laws of the State of New York.

---

[3] https://www.walmart.com/ip/BugMace-All-Natural-Organic-Mosquito-Insect-Repellent; see also https://jet.com/product/BugMace-All-Natural-and-Organic-Mosquito-and-Insect-Repellent; https://www.ebay.com/p/Bugmace-8-Oz-All-Natural-Organic-Mosquito-Outdoor-Insect-Repellent B01F9IHZT6/689391029?iid=323294222483&chn=ps; https://www.amazon.com/BugMace-Natural-Mosquito-Insect-Repellent/dp/B01F9IHZTG (last visited August 2, 2018.)

5

12. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) because the parties are of diverse citizenship and more than $75,000.00 is in controversy.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts and transactions alleged herein, including the marketing, advertising, purchase and receipt of the product at issue, occurred in Rockland County, New York.

**PARTIES**

14. Plaintiff Chaim Rubinstein is a resident of Rockland County, New York, who purchased a container of "Product" online, on the Site, on or about May 17, 2018. Plaintiff read Defendant's "all natural" representations, and purchased the Product for household/family use, as advertised. Upon using the Product a few times, Plaintiff reviewed the Product container to further assure himself that Product was indeed, as advertised, "all natural."

15. Plaintiff researched the Product ingredients and determined that potassium sorbate is, as used in consumer products commercially, synthetic.

16. Now aware of Product's synthetic ingredient and the alleged harm-causing potential of potassium sorbate, Plaintiff was appalled and seeks to effect through this suit a much-needed correction of Defendant's unfair and deceptive practices.

17. LLC, a New Jersey limited liability company, and McErlean, share a common address at 245 Colts Neck Rd., Farmingdale, NJ 07727-3641. They manufacture, market, label, and advertise the Product and have done so at all relevant times.

## PRIOR FEDERAL TRADE COMMISSION PROCEEDINGS CONCERNING "ALL NATURAL" AND "100% NATURAL" CLAIMS

18. The Federal Trade Commission has made clear in its official pronouncements, rules and orders that it is false and deceptive to advertise or package a product as "All natural" or "100% Natural" if it contains one or more synthetic products. https://www.ftc.gov/news-events/blogs/business-blog/2016/04/are-your-all-natural-claims-all-accurate.

19. The Federal Trade Commission has made clear in its official pronouncements, rules and orders that "[i]f companies market their products as 'all natural' or '100% natural,' consumers have a right to take them at their word." *Id.*

20. The Federal Trade Commission has provided a uniform prerequisite of "All Natural" and "100% Natural," i.e. zero synthetic ingredients.

21. As a significant player in the household products industry, BPI is keenly aware of its regulatory environment and the risks associated with non-compliance.

22. The Federal Trade Commission has recently sued and settled with four personal care products manufacturers, and is litigating with a fifth, by reason of "All Natural" or "100% Natural" representations, thereby affording definitive guidance to the industry, consumers and the courts.

Defendants have violated the law for many years, have not heeded the FTC's warnings, and have found financial success in deceiving the public.

## FACTS

23. Movement to "natural" and "green" consumer products is apparent in the entire cross section of consumer purchasing, be it fabrics, cosmetics, food, personal care products, medicine or other item bought for family and household use. This growing

7

market segment seeks "green" for reasons of personal health and ethical living.  With this demand for the "natural" comes an occasion for profit-driven marketers to deceive consumers as to product features that the consumer cannot verify on her own

24. Insecticide and pesticide sales, cleaning products and air fresheners are areas of the consumer marketplace where "under the radar" deception can be practiced with a small likelihood of detection.

25. Defendant's conduct harms consumers by inducing them to purchase and utilize the purported All Natural Product, on the false premise that it is All Natural when, in fact, Product contains an ingredient—and one toxic at that--that is not natural.

26. "All Natural" is a material factor in each consumer's selection of Product. Consumers acting reasonably under the circumstances, however, cannot detect the presence of synthetic ingredients and, hence, may use the Product for months or years unwittingly.  Such usage may lead to bioaccumulation of toxic material.  This possibility is of great concern where, as here, the Product is applied directly to the consumer's skin.

27. Defendants individuated Product by claiming "All Natural" to enable, unjustly, enhanced profitability and market share.

28. Throughout the Class Period and long before, Defendants systematically and prominently advertised, labeled and packaged the Product as "All Natural" such that any consumer shopping the Product was necessarily exposed to these misrepresentations.

**INJURY AND DAMAGES**

29. Plaintiff brings this lawsuit for injunctive relief, individually, to stem the ongoing deceptive practices aforesaid and restore a measure of commercial decency where it is wanting.

30. Plaintiff also brings this lawsuit for damage relief, individually and on behalf of a New York Class, pursuant to Section 349 aforesaid, to recover actual damages as therein provided.

31. Based on Defendant's representations that the Product is All Natural, Plaintiff and the Class were entitled to receive All Natural Product. Instead of receiving products that were All Natural, however, Plaintiff and the Class received Product containing a synthetic chemical. Such a product is worth ascertainably less than an All Natural Product. The differential of Product value received over Product value bargained for constitutes class member damages.

32. Notwithstanding its use of potassium sorbate, all the while representing "All Natural," Defendant deceived consumers into buying from LLC/McErlean (or their distributor, wholesaler, e-commerce seller) Product that consumers perceive to be a top-quality, safer product for a higher price than similar products offered by honest competitors that do not charge an "All Natural" premium. In point of fact, however, Defendant deceived consumers into purchasing Products **less** safe for them than many other products in the same price class. This aspect of Defendant's marketplace fraud and deception is outrageous and warrants punitive damages.

33. Whereas the Product is priced at $7.95 for 2 oz., or $4.00 per ounce, a similar amount of a similarly toxic product, honestly marketed, would cost substantially less, i.e. without the "all natural" premium. For example, Babyganics Natural Insect Repellent, 2 oz, sells for $2.21 per ounce, or about $1.79 per ounce less than the

misrepresented Product.[4] Plaintiff and class members are entitled to recover for the "all natural" premium they paid under false pretenses.

## CLASS ACTION ALLEGATIONS

34. Plaintiff Chaim Rubinstein brings this action on behalf of himself (injunction) and, pursuant to Civil Rule 23, on behalf of himself and a New York statewide class he seeks to represent (damages), defined as:

> All New York residents and others who have purchased Product at any time within the applicable statute of limitations (the "Class Period") within the State of New York (the "Class")

35. As used herein, the term "Class Members" shall mean and refer to the members of the Class described above.

36. Plaintiff reserves the right to amend the Class definition, and to add subclasses, as warranted by facts discovered. Plaintiff also reserves the right to expand the class to be national in scope. Plaintiff reserves the right to adjust the class period if, for example, a material change of formulation occurred, as Defendant claimed to Plaintiff it would occur, following the UCC 2-607 Notice, discussed *supra* ¶9.

37. Excluded from the Class are Defendant; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge(s) to whom this case is assigned and any immediate family members thereof.

38. Class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

39. Numerosity—The members of the Class are so numerous that joinder is

---

[4] See https://www.amazon.com/Babyganics-Natural-Insect-Repellent-Packaging/dp/B00AN4ASBO?th=1

10

impracticable. Upon information and belief, there are thousands of individual purchasers of the Products. The precise number of class members is unknown to Plaintiff, but may be ascertained, including by objective criteria. Most class members can be identified through e-commerce seller databases. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

40. Commonality and Predominance—This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. Common questions include:

(a) Whether LLC and McErlean represented and continue to represent Product as All Natural;

(b) Whether Defendant's marketing representations are false, deceptive, and misleading;

(c) Whether Defendant's representations are likely to deceive a reasonable consumer;

(d) Whether Defendant had knowledge that its representations were false, deceptive, and misleading;

(e) Whether Defendant continues to disseminate its representations despite knowledge that the representations are false, deceptive, and misleading;

(f) Whether a representation that Product is All Natural is material to a reasonable consumer of natural products;

(g) Whether Defendant violated Sections 349-350 of New York Business Code;

(h) Whether Defendant's marketing and pricing of Product causes reasonable m consumers to pay more for Product than for a comparable product not claimed to be "All Natural;"

(i) Whether Product is worth ascertainably less than genuine all-natural insect repellants and, if so, the marginal difference thereof;

41.. Defendant engaged in a common course of conduct giving rise to the legal

rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

42. Typicality—Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all members of the Class were comparably injured through the uniform misconduct described above and were subject to Defendant's false, deceptive, misleading, and unfair labeling and marketing practices, including the false claims that the Product is All Natural. Further, there are no defenses available to Defendant unique to individual Class Members.

43. Adequacy of Representation—Plaintiff is an adequate representative of the members of the Class because his interests do not conflict with the interests of the other members of the Class he seeks to represent; he has retained competent counsel with experience in complex class action litigation; and Plaintiff will prosecute this action vigorously. Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel.

44. Superiority—A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to seek redress for Defendant's wrongful conduct on an individual basis. Individualized

litigation would also pose the threat of significant administrative burden to the court system. Individual cases would create the potential for inconsistent or contradictory judgments, and would increase delay and expense to all parties and the court system. By contrast the class action device presents far fewer management difficulties and provides the streamlined benefits of singular adjudication and comprehensive supervision by one court. Given the similar nature of the class members' claims, the Class will be easily managed by the Court and the parties and will be managed more efficiently in this integrated class action than through multiple separate actions.

**COUNT I:**
**New York Consumer Protection from Deceptive Acts and Practices Act**
**(N.Y. Gen. Bus. Law §§ 349)**
**On Behalf of the New York Sub-Class**

45. Plaintiff re-alleges all preceding allegations as though set forth at length.

54. New York General Business Law ("NYGBL") §349 provides: Deceptive acts or practices in the conduct of any business, trade or commerce or the furnishing of any service in this state are hereby declared unlawful."

55. Defendant's representations of its Product are consumer oriented.

56. As above alleged, Defendant engaged in deceptive acts and practices within the meaning of NYGBL §349, vis-à-vis statements on the packaging, advertising and marketing that the Product is "All Natural."

57. Plaintiff read and reviewed the packaging and advertising prior to purchase, noted the "all natural" representations, and alleges that they were material to Plaintiff's decision to purchase Product. But for such representations Plaintiff would not have made the purchase.

58. Defendant violated NYGBL §349 and, as a consequence of such misconduct, Plaintiff and the other members of the Class suffered injury and have been damaged in an amount equal to the greater of the overpayment for the Product (¶33 *supra)*, or (ii) the insufficiency of consideration (¶ 31 *supra*).

## COUNT II
**Violation of §§349-350 of the New York General Business Law (Injunction)**
**Individually**

59. Plaintiff re-alleges all preceding allegations as though set forth at length.

60. Plaintiff is entitled to obtain injunctive relief to protect the public from Defendant's deceptive practices:

> Given the afore cited purpose of the statute, to encourage private enforcement of consumer protection, to strongly deter deceptive business practices, and to supplement the activities of the New York State Attorney General in prosecuting consumer fraud complaints, I hold that the Legislature intended the irreparable injury at issue to be irreparable injury to the public at large, not just to one consumer.

*Schatz v. Cellco P'ship*, 842 F. Supp. 2d 594, 608 (S.D.N.Y. 2012), citing *McDonald v. North Shore Yacht Sales, Inc.,* 134 Misc. 2d 910, 513 N.Y.S.2d 590 (Sup. Ct. 1987).

WHEREFORE Plaintiff, on behalf of himself and the Class prays as follows:

a. An order certifying this case as a class action, designating Plaintiff as the representative of the Class and his counsel as class counsel;

b. A permanent injunction against Defendants LLC and McErlean enjoining and restraining them from representing in advertising, packaging, marketing or labeling its Product as All Natural;

c. Actual and/or statutory damages pursuant to NYGBL §349;

d. Attorney fees; and

e. Costs.

/s/ Mark Schlachet
Mark Schlachet
3515 Severn Road
Cleveland, Ohio 44118
(216) 225-7559
(216) 932-5390(f)
markschlachet@me.com

*Attorney for Plaintiff*